# EXHIBIT A

# SUPER LAW GROUP, LLC

June 2, 2022

**<u>Via Certified Mail, Return Receipt Requested</u>**

Capital Industries, Inc.
33 Comac Loop
Ronkonkoma, NY 11779

Capital Industries, Inc.
555 Saw Mill River Road
Yonkers, NY 10701

State Contracting Corp of NY
555 Saw Mill River Road
Yonkers, NY 10701

George McGuire
555 Saw Mill River Road
Yonkers, NY 10701

Re:   <u>Notice of Violation and Intent to File Suit under the Clean Water Act</u>

To Whom It May Concern,

We are writing on behalf of Riverkeeper, Inc. ("Riverkeeper"),[1] to notify you of Riverkeeper's intent to file suit against Capital Industries, Inc., State Contracting Corp of NY, and George McGuire (collectively "Capital") pursuant to Section 505(a) of the federal Clean Water Act ("CWA")[2] for violations of the CWA.

Riverkeeper intends to file suit, as an organization and on behalf of its adversely affected members, in the United States District Court for the Southern District of New York seeking appropriate equitable relief, civil penalties, and other relief no earlier than 60 days from the postmark date of this letter.[3]

Riverkeeper intends to take legal action because Capital is discharging polluted stormwater from its vehicle and equipment maintenance and storage facility located at 555 Saw Mill River

---

[1] Riverkeeper, Inc. is a not-for-profit environmental organization existing under the laws of the state of New York, headquartered in Ossining, New York. Riverkeeper's mission includes safeguarding the environmental, recreational, and commercial integrity of the Hudson River and its ecosystem, as well as the watersheds that provide New York City with its drinking water. Riverkeeper achieves its mission through public education, advocacy for sound public policies, and participation in legal and administrative forums. Riverkeeper has more than 3,800 members, many of whom reside near to, use, and enjoy the Hudson River and the waters and tributaries of the Hudson River and New York Harbor, including the Saw Mill River—waters that are polluted by industrial stormwater runoff.

[2] 33 U.S.C. § 1365(a). We refer to statutory provisions by their section in the Clean Water Act and provide the parallel citation to the United States Code only on first reference.

[3] *See* 40 C.F.R. § 135.2(a)(3)(c) (notice of intent to file suit is deemed to have been served on the postmark date).

Notice of Violation and Intent to File Suit
June 2, 2022
Page 2 of 18

Rd, Yonkers, New York 10701 ("the Facility"), to the waters of the United States without a permit in violation of CWA Sections 301(a) and 402(p).[4] Further, Capital has not applied for coverage under, nor complied with the conditions of, an individual National Pollutant Discharge Elimination System ("NPDES") permit or the Multi-Sector General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit")[5] issued by the New York State Department of Environmental Conservation ("DEC"), in violation of CWA Section 402(p), and 40 C.F.R. §§ 122.26(c)(1) and (e)(1).

## I.

## BACKGROUND

With every rainfall event, hundreds of millions of gallons of polluted rainwater pour into the Hudson River, the Saw Mill River, and other receiving waters. The consensus among agencies and water quality specialists is that stormwater pollution accounts for much of the total pollution entering the marine environment each year.[6]

To protect the waters of the United States from such pollution, the CWA prohibits the discharge of pollutants from a "point source" into the waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit. NPDES permits are issued by the United States Environmental Protection Agency ("EPA") or by states that have been authorized by EPA to act as NPDES permitting authorities, provided that the state permitting program ensures compliance with the procedural and substantive requirements of the CWA.[7] In New York, DEC has been delegated the authority to issue NPDES permits. As a delegated state NPDES permitting agency, DEC has elected to issue a statewide general permit for industrial stormwater discharges in New York. The current version of the General Permit came into effect on March 1, 2018. DEC also has the authority to issue SPDES permits for individual applicants.

DEC has designated more than 7,000 river miles, 319,000 acres of larger waterbodies, 940 square miles of bays and estuaries, and 592 miles of Great Lakes shoreline in the State as "impaired," or not meeting water quality standards, and unable to support beneficial uses such as fish habitat and water contact recreation.[8] For the overwhelming majority of water bodies listed as impaired, stormwater runoff is cited as a primary source of the pollutants causing the

---

[4] 33 U.S.C. §§ 1311(a) and 1342(p)(2)(B).

[5] *SPDES Multi-Sector General Permit For Stormwater Discharges Associated With Industrial Activity*, Permit No. GP-0-17-004, N.Y. DEP'T ENVTL. CONSERVATION (Mar. 1, 2018) [hereinafter *General Permit*], https://www.dec.ny.gov/docs/water_pdf/msgp017004.pdf. This General Permit replaces earlier general permits for the discharge of stormwater associated with industrial activity and will expire on February 28, 2023.

[6] Stormwater is water from precipitation events that flows across the ground and pavement after it rains or after snow and ice melt. *See* 40 C.F.R. § 122.26(b)(13).

[7] CWA § 402(b)(1), 33 U.S.C. § 1342(b)(1); 40 C.F.R. § 123.25(a).

[8] *New York Assessment Data*, U.S. ENVTL. PROT. AGENCY (2012), http://ofmpub.epa.gov/waters10/attains_state.report_control?p_state=NY&p_cycle=2012&p_report_type=A; *see also NYS Section 305(b) Water Quality Report*, N.Y. DEP'T ENVTL. CONSERVATION (2018), http://www.dec.ny.gov/chemical/66532.html

Notice of Violation and Intent to File Suit
June 2, 2022
Page 3 of 18

impairment.[9]  Contaminated stormwater discharges can and must be controlled in order to improve the quality and health of these waterbodies.

Stormwater discharges flow from the Facility to the Saw Mill River overland and through drains.  Given the Saw Mill River's position directly adjacent to the Facility, and the presence of storm drains at the Facility and on the public street adjacent, Riverkeeper believes stormwater reaches the Saw Mill River through both means.

DEC has classified Saw Mill River, where the Facility discharges, as a Class C water.[10] Under New York's Water Quality Standards, a waterbody that is designated as C is meant to be suitable for fishing and for fish, shellfish, and wildlife propagation and survival, as well as for potential use for primary and secondary contact recreation.[11] The New York Water Quality Standards also set numeric and narrative criteria for different water pollution parameters including dissolved oxygen, oil and grease, suspended and settleable solids, bacteria (pathogens), pH, temperature, nutrients, and others.[12] A waterbody must meet these numeric and narrative criteria in order to support its designated uses.

The Saw Mill River consistently fails to meet state water quality standards; illegal stormwater discharges from this Facility contribute to this failure.[13] DEC has designated the Saw Mill River as impaired pursuant to CWA Section 303(d)[14] for failure to meet minimum water quality standards for dissolved oxygen and multiple pollutants, including phosphorous and fecal coliform.[15]

While the Saw Mill River is a heavily developed waterway, its water quality should not be sacrificed. At a minimum, Capital must stop illegally discharging polluted stormwater and other effluents.

## II.

## STANDARDS AND LIMITATIONS ALLEGED TO HAVE BEEN VIOLATED AND ACTIVITIES ALLEGED TO BE VIOLATIONS

A.    **Capital Is Discharging Stormwater Associated with Industrial Activity to Waters of the United States without a Permit.**

---

[9] *See generally NYS Section 305(b) Water Quality Report*, *Executive Summary*, at 6, https://www.dec.ny.gov/docs/water_pdf/section305b2018.pdf (identifying urban stormwater runoff as a top ten source of water quality impairment).
[10] 6 N.Y.C.R.R. Part 859.4.
[11] 6 N.Y.C.R.R. § 701.8.
[12] *See generally* §§ 702, 703 (outlining quantitative and qualitative standards, respectively).
[13] *Section 303(d) List of Impaired Waters Requiring a TMDL/Other Strategy*, N.Y. Dep't Envtl. Conservation, 6 (June 2020), https://www.dec.ny.gov/docs/water_pdf/section303d2018.pdf [hereinafter "*303(d) List*"].
[14] 33 U.S.C. § 1313(d).
[15] *303(d) List*, *supra* note 13, at 6.

Notice of Violation and Intent to File Suit
June 2, 2022
Page 4 of 18

The CWA prohibits the discharge of pollutants to the waters of the United States except in accordance with a valid NPDES permit.[16] Capital's industrial activity at the Facility has caused and continues to cause a "discharge of pollutants" within the meaning of CWA Section 502(12)[17] and a "stormwater discharge associated with industrial activity" within the meaning of 40 C.F.R. § 122.26(b)(14) from the Facility on at least each and every day that there has been a rain event of more than 0.1 inches.[18]

On its website, Capital states that it provides multiple services including the demolition of structures,[19] interior demolition,[20] and debris removal/dumpster services.[21] Capital's activities at the Facility support these services and include, but are not limited to, vehicle and equipment storage and maintenance. The Facility has exposed and continues to expose industrial pollutants to stormwater, at a minimum, by: (a) conducting vehicle maintenance and parking vehicles awaiting maintenance; (b) conducting maintenance on roll off containers and other waste storage containers, including soldering, patching, and otherwise repairing roll-off containers and other equipment; (c) storing dumpsters and roll-off containers that have held waste materials; (d) keeping other machinery/equipment outside or otherwise exposing the machinery and above activities to the elements; and (e) from vehicles entering and leaving the Facility that track pollutants off site. During precipitation events (including runoff from rainfall and snow or ice melt events), pollutants are carried away from the Facility in stormwater discharges into the Saw Mill River.

Many of Capital's activities at the Facility are conducted outdoors. In carrying out the above activities at the Facility, Capital stores and handles materials, dumpsters, vehicles, and equipment in a manner that exposes pollutants to precipitation and snowmelt. The stormwater discharged from the Facility enters the Saw Mill River and can bring with it solids that suspend or dissolve in stormwater, metals, hydraulic fluids, fuel, and other pollutants.[22]

Trucks and other vehicles driving on and off the property are point sources of pollution. The Facility uses heavy vehicles and stores machinery outdoors. Besides the wastes they carry, vehicles and industrial equipment at the Facility may expose many other pollutants to the elements, including gasoline, diesel fuel, anti-freeze, and hydraulic fluids. Capital's trucks and dumpsters constitute point sources of water pollution in and of themselves.

All of these pollution sources are exposed to precipitation and snowmelt. In addition to waste residues, these pollution sources also may release fuel, oil, lubricants, PCBs, PAHs, an array

---

[16] CWA §§ 301(a), 402.

[17] 33 U.S.C. § 1362(12).

[18] EPA has determined that precipitation greater than 0.1 inches in a 24-hour period constitutes a measurable precipitation event for the purposes of evaluating stormwater runoff associated with industrial activity. *See, e.g.*, 40 C.F.R. § 122.26(c)(i)(E)(6) (using 0.1 inches as the distinguishing threshold of a storm event).

[19] *Demolition Services*, CAPITOL INDUSTRIES CORP., https://capitalwrecking.com/demolition-services (last visited June 22, 2021).

[20] *Id*.

[21] https://capitalwrecking.com (last visited June 1, 2022).

[22] *See Industrial Stormwater Fact Sheet Series – Sector P*, EPA-833-F-06-031, U.S. ENVTL. PROT. AGENCY (Feb. 2021), https://www.epa.gov/sites/default/files/2015-10/documents/sector_p_transportationfacilities.pdf.

Notice of Violation and Intent to File Suit
June 2, 2022
Page 5 of 18

of metals, pH-affecting substances and chemical residues. These toxic pollutants are often generated in the form of small particulate matter, which settles on the ground and other surfaces that are exposed to stormwater and non-stormwater flows.

Because Capital fails to adequately shelter and otherwise contain these materials to prevent their release to the environment, precipitation falls on and flows over exposed materials, fluids, and particulates. Polluted stormwater discharges flow from the Facility to the Saw Mill River.

The Saw Mill River is a "water of the United States," as defined in 40 C.F.R. § 122.2 and, therefore, "navigable water" as defined in CWA Section 502(7). Capital does not have a NPDES permit for these discharges of pollutants. Thus, Capital is discharging polluted industrial stormwater into navigable waters of the United States without the permit required under CWA Sections 301 and 402.

**B.      Capital is Failing to Apply for NPDES Permit Coverage.**

At the Facility, Capital is engaged in vehicle and equipment storage and maintenance for its fleet of trucks and dumpsters/containers. Capital is therefore engaged in local trucking and vehicle and equipment maintenance under Standard Industrial Classification ("SIC") Code 4212, which are industrial activities included in Sector P of the General Permit. Pursuant to CWA Section 402(p) and the regulations promulgated by EPA pursuant to the CWA, Capital must apply for coverage under the General Permit or an individual NPDES permit for Capital's discharge of polluted stormwater. In addition, Capital must apply for an individual NPDES permit if the Facility is discharging process wastewater, or has any other non-stormwater discharge containing pollutants, that is not authorized by the General Permit. By failing to apply for coverage under the General Permit or an individual permit, Capital is violating CWA Sections 301(a), 402(a) and 402(p) and 40 C.F.R. §§ 122.26(c)(1) and (e)(1).[23]

To be eligible to discharge stormwater associated with its industrial activities under the General Permit, Capital must submit to DEC a registration form called a "Notice of Intent."[24] To register, Capital is required, among other things, to list all stormwater discharges, to describe each of the industrial activities taking place in the drainage area of each discharge and the acreage of industrial activity exposed to stormwater, the immediate surface water body or wetland to which site runoff discharges, and the name of the watershed and nearest waterbody to which the site ultimately discharges and information about whether the receiving waters are impaired. Capital has failed to prepare and file a Notice of Intent or an application for an individual permit.

---

[23] Sections 301(a) and 402(a) and (p) make it unlawful for Capital to discharge stormwater associated with industrial activity without obtaining a NPDES permit.  40 C.F.R. Sections 122.26(c)(1) and (e)(1) require Capital to apply for a NPDES permit that covers Capital's discharge of stormwater associated with industrial activity.

[24] *General Permit*, *supra* note 5, Part I.D.1.a.2.  In notifying Capital that it is violation of the General Permit, Riverkeeper does not concede that all of the activities conducted at the Facility are necessarily eligible for coverage under that permit. For example, if a Facility is discharging process wastewater, such as wash water, or has any other polluted non-stormwater discharge that is not authorized by the General Permit, then an individual NPDES permit is required and the failure to obtain and comply with an individual NPDES permit for such discharges also violates CWA §§ 301(a) and 402(p). The conditions for eligibility to discharge under the General Permit are provided at Part I.B of the permit.

Notice of Violation and Intent to File Suit
June 2, 2022
Page 6 of 18

## C. **Capital is Failing to Comply with the General Permit.**

As a discharger of stormwater associated with industrial activity, Capital must comply at all times with the requirements of the General Permit (or an individual permit). By discharging stormwater associated with industrial activity without complying with the General Permit, Capital is violating CWA Sections 301(a) and 402(a) and (p).[25] The following summarizes the main General Permit requirements that Capital has failed and continues to fail to meet.

### 1. **Capital has not developed and implemented a Stormwater Pollution Prevention Plan.**

Before submitting a registration form, Capital must prepare, make available, and implement a Stormwater Pollution Prevention Plan ("SWPPP") in accordance with schedules established in the General Permit.[26] The SWPPP must identify potential sources of pollution that may affect the quality of stormwater discharges associated with industrial activity. Further, the SWPPP must describe and ensure the implementation of practices that minimize the discharge of pollutants in these discharges and that assure compliance with the other terms and conditions of the General Permit, including achievement of effluent limitations.[27]

Among other things, the SWPPP must include: a general site description; a general location map identifying the location of the facility and all receiving waters to which stormwater discharges; information related to a company stormwater pollution prevention team; a summary of potential pollutant sources; a description of control measures and best management practices; and schedules and procedures for implementation of control measures, monitoring, and inspections.[28]

Capital has not developed and implemented a legally compliant SWPPP for the Facility, as required by Part III of the General Permit.[29]

### 2. **Capital has not implemented control measures and Best Management Practices that meet the best available technology standards.**

Capital cannot legally discharge stormwater under the General Permit from the Facility until Capital implements mandatory general and sector-specific control measures called Best Management Practices ("BMPs") in order to minimize the discharge of pollutants from the

---

[25] Sections 301(a) and 402(a) and (p) make it unlawful for Capital to discharge stormwater associated with industrial activity without first complying with all of the conditions established in a NPDES permit.

[26] *General Permit*, *supra* note 5, Part III.C.

[27] *Id.*, Part III.A.

[28] *Id.*

[29] Riverkeeper believes no SWPPPs exist for the Facility. If a SWPPP exists at the Facility, then it is either facially inadequate or has not been fully and adequately implemented.

Notice of Violation and Intent to File Suit
June 2, 2022
Page 7 of 18

Facility.[30] The selected measures must reduce the discharge of pollution from each Facility to the extent practicable through use of the best available technology for the industry.

The General Permit requires that the owner or operator must select, design, install, and implement control measures (including best management practices), in accordance with good engineering practices, to meet the effluent limits contained in the permit.[31] The General Permit's effluent limits include both limits specific to certain sectors[32] and limits that apply to all facilities.[33] These restrictions include minimizing the exposure of pollutants to stormwater and minimizing the discharge of pollutants in stormwater to the extent achievable using control measures (including best management practices) that are technologically available, economically practicable, and achievable in light of best industry practice.[34]

Capital has not minimized the exposure of pollutants or the discharge of pollution to the extent achievable by implementing control measures or BMPs that are technologically achievable and economically practicable and achievable in light of best industry practice, as required by Parts II and VII of the General Permit.

### 3.   Capital has not conducted routine site inspections and complied with monitoring, recordkeeping, and reporting requirements.

Capital must conduct an annual comprehensive site inspection and evaluation of areas where industrial materials or activities are exposed to precipitation or where spills and leaks have occurred within the past three years.[35] The inspection must ensure that all stormwater discharges are adequately controlled and that all BMPs are functioning as expected.[36] Records of this inspection must be kept for five years.[37]

In addition, qualified facility personnel must carry out routine inspections at least quarterly.[38] During these inspections, personnel must evaluate conditions and maintenance needs of stormwater management devices, detect leaks and ensure the good condition of containers, evaluate the performance of the existing stormwater BMPs described in the SWPPP, and document

---

[30] *General Permit*, *supra* note 5, Part II.D; *see also id.*, Part VII (setting forth sector-specific control measures and practices).

[31] *Id.*, Part II; *see also id.*, Part III.A.7 ("The SWPPP must document in writing the location and type of BMPs installed and implemented at the facility to achieve the non-numeric effluent limits in Part II.A. and where applicable in Part VII, and the sector specific numeric effluent limitations in Part VII.").

[32] *See generally id.*, Part VII (laying out sector-specific requirements).

[33] *Id.*, Part II.

[34] *Id.* ("Effluent limits are required to minimize the discharge of pollutants. The term 'minimize' means reduce and/or eliminate to the extent achievable using control measures (including Best Management Practices . . .) that are technologically available and economically practicable and achievable in light of best industry practice.").

[35] *Id.,* Part IV.A.1.

[36] *Id.*

[37] *Id.*, Part IV.A.2.

[38] *Id.*, Part IV.B.

Notice of Violation and Intent to File Suit
June 2, 2022
Page 8 of 18

any deficiencies in the implementation and/or adequacy of the SWPPP.[39] Such deficiencies must then be addressed through corrective actions.[40]

The General Permit requires that all covered facilities conduct multiple types of analytical monitoring, and DEC may require additional individualized monitoring as well.[41]  In particular, all facilities authorized under the General Permit must, at minimum:

- conduct visual monitoring of stormwater discharges at least quarterly;[42]
- collect and analyze stormwater samples for each outfall at least semi-annually;[43]
- perform an annual dry weather inspection to detect non-stormwater discharges;[44]
- inspect, sample, and monitor discharges from secondary containment structures and transfer areas;[45]
- document storm events during which any samples are taken;[46]
- document all of these monitoring activities;[47]
- keep records of the monitoring with the Facility's SWPPP;[48] and
- submit an annual report to DEC accompanied by a Discharge Monitoring Report detailing the results of all required stormwater samples, as well as reports that document any instance of non-compliance with benchmarks or numeric effluent limitations.[49]

In addition, because Capital engages in industrial activities associated with Sector P, sampling is required for:

- Oil & Grease;
- Chemical Oxygen Demand;
- Benzene;
- Ethylbenzene;
- Toluene; and
- Xylene.[50]

Riverkeeper is not necessarily aware of all industrial activities taking place at the Facility. To the extent that industrial activities other than the above are carried out at the Facility, other

---

[39] *General Permit*, *supra* note 5.
[40] *Id*., Part V.
[41] *Id.*, Part IV.F.1, 2.
[42] *Id.*, Part IV.E.
[43] *Id.*, Part IV.F.2.
[44] *Id.*, Part IV.C.
[45] *Id.*, Part IV.F.1.e.
[46] *Id.*, Part IV.D.3.
[47] *Id.,* Parts IV, VI.
[48] *Id.*, Part IV.A.2.
[49] *Id.*, Part VI.A.
[50] *Id.*, Part VII.P.

Notice of Violation and Intent to File Suit
June 2, 2022
Page 9 of 18

sampling may be required as well.[51] This notice provides Capital with sufficient information to identify the standards and limitations that apply to all categories of industrial activity.

Capital has failed at the Facility to conduct the required annual and other routine inspections, monitoring, and testing, as required by, at least, Parts IV, VI, and VII of the General Permit. Capital also has failed to retain records and submit monitoring reports to DEC pertaining to the Facility, as required by, at least, Parts IV, VI, and VII of the General Permit.

### 4.    Capital has failed to comply with additional requirements located in Part VII of the General Permit.

As noted above, the General Permit contains various requirements specific to Sectors P and N. These requirements are collected in Part VII of the General Permit. Capital has failed to comply with these additional requirements of Part VII of the General Permit.

In sum, Capital's discharge of stormwater associated with industrial activities without a permit, Capital's failure to apply for permit coverage, and Capital's failure to comply with the above-listed conditions of the General Permit (or an individual NPDES permit) constitute violations of the General Permit and of Sections 301(a) and 402(p) of the Clean Water Act.

**III.**

**PERSONS RESPONSIBLE FOR ALLEGED VIOLATIONS**

Capital Industries, Inc., State Contracting Corp of NY, and George McGuire (collectively "Capital") are the persons responsible for the violations alleged in this Notice. Capital has operational control over the day-to-day industrial activities at this Facility. Capital is responsible for managing stormwater at the Facility in compliance with the CWA. Riverkeeper hereby puts Capital on notice that if Riverkeeper subsequently identifies additional persons as also being responsible for the violations set forth above, Riverkeeper intends to include those persons in this action.

**IV.**

**LOCATION OF THE ALLEGED VIOLATION**

The violations alleged in this Notice have occurred and continue to occur at the Facility located at 555 Saw Mill River Rd, Yonkers, New York 10701. Stormwater associated with industrial activity discharges into the Saw Mill River. The failure to develop and implement pollution prevention plans and take the other required measures are violations occurring at the Facility in general and in the inadequate documents themselves.[52]

---

[51] *See generally General Permit*, *supra* note 5, Part VII (outlining sector-specific requirements).

[52] The federal courts have held that a reasonably specific indication of the area where violations occurred, such as the name of the facility, is sufficient and that more precise locations need not be included in the notice. *See, e.g.*, *NRDC v. Sw. Marine, Inc.*, 945 F. Supp. 1330, 1333 (S.D. Cal. 1996), *aff'd* 236 F.3d 985, 996 (9th Cir. 2000); *City*

Notice of Violation and Intent to File Suit
June 2, 2022
Page 10 of 18

V.

**DATES OF VIOLATION**

Every day upon which Capital has failed to apply for permit coverage since Capital first commenced operations at the Facility and discharged polluted stormwater is a separate violation of CWA Section 301(a) and EPA's regulations implementing the CWA.[53]

Additionally, Capital has discharged pollution without a permit in violation of Section 301(a) of the CWA on every day since Capital commenced operations at the Facility on which there has been a measurable precipitation event or discharge of previously accumulated precipitation (i.e., snowmelt) over 0.1 inches.

Appendix A sets forth specific rain dates on which Riverkeeper alleges that the Facility discharged storm water from its unpermitted outfall in violation of Section 301(a) of the Clean Water and of the General Permit. The second column shows precipitation. Riverkeeper alleges that the Facility discharged stormwater on each day of these events, as either 0.1 inch of rain or 1.0 inch of snow (shown here in water-equivalent inches) fell on these days. This list of dates is not exclusive, and Riverkeeper hereby notifies Capital that Riverkeeper intends to take legal action regarding any other days on which Riverkeeper later learns that Capital discharged pollutants from the Facility. In sum, Riverkeeper alleges that the Facility discharged stormwater from its unpermitted outfall on 419 days.

Finally, if Capital seeks permit coverage after receiving this letter but fails to fully comply with the requirements of the General Permit (or an individual permit), each day upon which Capital claims coverage under a NPDES permit but fails to comply with that permit will constitute a separate day of violation with respect to each unmet condition of that permit.

Capital is liable for the above-described violations occurring prior to the date of this letter, and for every day after the date of this letter that these violations continue. In addition to the violations set forth above, this Notice covers all violations of the CWA evidenced by information that becomes available to Riverkeeper after the date of this Notice of Intent to File Suit.[54] These violations are ongoing and, barring full compliance with the permitting requirements of the Clean Water Act, these violations will continue.

---

*of New York v. Anglebrook Ltd. P'ship*, 891 F. Supp. 900, 908 (S.D.N.Y. 1995); *United Anglers v. Kaiser Sand & Gravel Co.*, No. C 95-2066 CW, 1995 U.S. Dist. LEXIS 22449 at *4 (N.D. Cal. Sept. 27, 1995).

[53] *See also* 33 U.S.C. §§ 402(p)(3)(A) and (p)(4)(A) (requiring the establishment of industrial stormwater NPDES permits and of a permit application process).

[54] *See, e.g. Pub. Interest Research Grp. v. Hercules, Inc.*, 50 F.3d 1239, 1248-49 (3d Cir. 1995) (a notice that adequately identifies specific violations to a potential defendant also covers repeated and related violations that the plaintiff learns of later. "For example, if a permit holder has discharged pollutant 'x' in excess of the permitted effluent limit five times in a month but the citizen has learned only of four violations, the citizen will give notice of the four violations of which the citizen then has knowledge but should be able to include the fifth violation in the suit when it is discovered.")

Notice of Violation and Intent to File Suit
June 2, 2022
Page 11 of 18

# VI.

## RELIEF REQUESTED

Riverkeeper will ask the court to order Capital to comply with the CWA, to pay penalties, and to pay Riverkeeper's costs and legal fees.

First, Riverkeeper will seek declaratory relief and injunctive relief to prevent further violations of the Clean Water Act pursuant to Sections 505(a) and (d) and such other relief as permitted by law. Riverkeeper will seek an order from the Court requiring Capital to obtain NPDES permit coverage and to correct all other identified violations through direct implementation of control measures and demonstration of full regulatory compliance.

Second, pursuant to CWA Section 309(d),[55] each separate violation of the CWA subjects Capital to a penalty not to exceed not to exceed $59,973 per day.[56] Riverkeeper will seek the full penalties allowed by law.

Third, pursuant to CWA Section 505(d), Riverkeeper will seek recovery of its litigation fees and costs (including reasonable attorney and expert witness fees) associated with this matter.[57]

# VII.

## PERSONS GIVING NOTICE

The full name, address, and telephone number of the persons giving notice are as follows:

Riverkeeper, Inc.
20 Secor Road
Ossining, NY 10562
(914) 478-4501
Attn: Victoria Leung

---

[55] 33 U.S.C. § 1319(d); *see also* 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation).
[56] 40 C.F.R. §§ 19.2 and 19.4.
[57] 33 U.S.C. § 1365(d).

Notice of Violation and Intent to File Suit
June 2, 2022
Page 12 of 18

## VIII.

## IDENTIFICATION OF COUNSEL

Riverkeeper is represented by legal counsel in this matter.  The name, address, and telephone number of Riverkeeper's attorneys are:

Edan Rotenberg, Esq.
Benjamin Pierce, Esq.
Super Law Group, LLC
110 Wall Street
New York, New York 10005
(212) 242-2355

## IX.

## CONCLUSION

The foregoing provides more than sufficient information to permit Capital to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.[58]

If Capital has developed a SWPPP, Riverkeeper requests that Capital send a copy to the undersigned attorney.[59]  Otherwise, Riverkeeper encourages Capital to begin developing a SWPPP immediately after receiving this letter and asks that Capital please inform the undersigned attorney of Capital's efforts so Riverkeeper can work with Capital to avoid disputes over the contents of the SWPPP.[60]

During the sixty-day notice period, Riverkeeper is willing to discuss effective remedies for the violations noted in this letter that may avoid the necessity of protracted litigation. If Capital wishes to pursue such discussions, please contact the undersigned attorney immediately so that

---

[58] 40 C.F.R. § 135.3(a).

[59] Note that under Part III.C.2 of the General Permit, the owner or operator of a facility "must make a copy of the SWPPP available to the public within 14 days of receipt of a written request."

[60] Riverkeeper will not send a new notice letter in response to any effort Capital makes to come into compliance with the Clean Water Act after receiving this letter, for example, by developing a SWPPP.  The federal courts have held that citizens sending a notice letter are not required to identify inadequacies in compliance documents that do not yet exist and are "not required to send a second notice letter in order to pursue specific claims regarding the inadequacies of [a defendant's] post-notice compliance efforts." *WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 920 (9th Cir. 2004). *See also Sw. Marine, Inc.*, 236 F.3d at 997 (9th Cir. 2000) ("subject matter jurisdiction is established by providing a notice that is adequate on the date it is given to the defendant. The defendant's later changes . . . do not retroactively divest a district court of jurisdiction under 33 U.S.C. § 1365(b)."); *Anglebrook Ltd. P'ship*, 891 F. Supp. at 908 (S.D.N.Y. 1995) (plaintiff's notice letter based on inadequacies of defendant's original SWPPP held sufficient to establish court's jurisdiction, even though defendant later prepared a revised SWPPP).

Notice of Violation and Intent to File Suit
June 2, 2022
Page 13 of 18

negotiations may be completed before the end of the sixty-day notice period. We do not intend to delay the filing of a complaint in federal court, regardless of whether discussions are continuing at the conclusion of the sixty days.

Sincerely,

Benjamin Pierce
Edan Rotenberg
Super Law Group, LLC
110 Wall Street
New York, New York 10005
(212) 242-2355, ext. 4
ben@superlawgroup.com

*Attorneys for Riverkeeper, Inc.*

cc:

Michael Regan, Administrator
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Lisa F. Garcia, EPA Region 2 Administrator
Environmental Protection Agency
290 Broadway
New York, NY 10007-1866

Basil Seggos, Commissioner
New York State Department of Environmental Conservation
625 Broadway
Albany, NY 12233-1011

Notice of Violation and Intent to File Suit
June 2, 2022
Page 14 of 18

**Appendix A:**
**NOAA Precipitation Data, June 4, 2017 through May 22, 2022[61]**

| Date | Precip. | Date | Precip. | Date | Precip. |
|------|---------|------|---------|------|---------|
| 6/4/17 | 0.2 | 9/14/17 | 0.2 | 2/11/18 | 0.92 |
| 6/6/17 | 0.1 | 9/19/17 | 0.1 | 2/15/18 | 0.13 |
| 6/16/17 | 0.28 | 10/8/17 | 0.12 | 2/16/18 | 0.16 |
| 6/17/17 | 0.15 | 10/9/17 | 0.29 | 2/17/18 | 0.61 |
| 6/19/17 | 0.95 | 10/24/17 | 0.18 | 2/22/18 | 0.23 |
| 6/24/17 | 0.73 | 10/29/17 | 3.75 | 2/23/18 | 0.12 |
| 6/27/17 | 0.16 | 10/30/17 | 0.38 | 2/25/18 | 0.63 |
| 7/1/17 | 0.15 | 11/7/17 | 0.57 | 3/1/18 | 0.22 |
| 7/7/17 | 1.13 | 11/16/17 | 0.29 | 3/2/18 | 1.75 |
| 7/11/17 | 0.23 | 11/18/17 | 0.17 | 3/7/18 | 0.33 |
| 7/13/17 | 0.63 | 11/19/17 | 0.15 | 3/21/18 | 0.17 |
| 7/14/17 | 0.57 | 12/5/17 | 0.46 | 4/2/18 | 0.46 |
| 7/24/17 | 0.55 | 12/9/17 | 0.18 | 4/3/18 | 0.34 |
| 7/29/17 | 0.15 | 12/23/17 | 0.47 | 4/15/18 | 0.32 |
| 8/2/17 | 0.19 | 12/25/17 | 0.15 | 4/16/18 | 2.44 |
| 8/5/17 | 0.43 | 1/12/18 | 0.65 | 4/19/18 | 0.36 |
| 8/7/17 | 0.45 | 1/13/18 | 0.17 | 4/25/18 | 0.58 |
| 8/12/17 | 0.47 | 1/17/18 | 0.13 | 4/29/18 | 0.12 |
| 8/18/17 | 0.58 | 1/23/18 | 0.29 | 5/3/18 | 0.31 |
| 8/22/17 | 0.24 | 1/28/18 | 0.18 | 5/10/18 | 0.34 |
| 9/2/17 | 0.35 | 2/2/18 | 0.13 | 5/12/18 | 0.15 |
| 9/3/17 | 0.92 | 2/4/18 | 0.98 | 5/13/18 | 0.1 |
| 9/6/17 | 0.53 | 2/7/18 | 0.6 | 5/15/18 | 0.41 |
| | | 2/10/18 | 0.61 | 5/16/18 | 0.7 |

---

[61] The rain dates in the table are all the days when 0.1 inch or more rain was observed at the nearest weather station to the Facility. Rain data was accessed from the National Oceanic and Atmospheric Administration. *Climate Data Online Search*, NAT'L OCEANIC & ATMOSPHERIC ADMIN., https://www.ncdc.noaa.gov/cdo-web/search (last visited June 1, 2022).

Notice of Violation and Intent to File Suit
June 2, 2022
Page 15 of 18

| | | | | | |
|---|---|---|---|---|---|
| 5/17/18 | 0.22 | 8/22/18 | 0.4 | 12/21/18 | 2.53 |
| 5/19/18 | 0.53 | 8/31/18 | 0.1 | 12/28/18 | 0.83 |
| 5/22/18 | 0.25 | 9/6/18 | 1.4 | 12/31/18 | 0.96 |
| 5/23/18 | 0.1 | 9/9/18 | 0.2 | 1/1/19 | 0.12 |
| 6/4/18 | 0.35 | 9/10/18 | 1.45 | 1/5/19 | 0.77 |
| 6/5/18 | 0.13 | 9/12/18 | 0.14 | 1/8/19 | 0.17 |
| 6/21/18 | 0.35 | 9/18/18 | 0.53 | 1/19/19 | 0.21 |
| 6/24/18 | 0.54 | 9/25/18 | 4.41 | 1/20/19 | 1.02 |
| 6/28/18 | 1.83 | 9/26/18 | 0.25 | 1/24/19 | 1.68 |
| 7/6/18 | 0.15 | 9/28/18 | 0.59 | 1/29/19 | 0.37 |
| 7/14/18 | 0.38 | 10/2/18 | 2.26 | 2/6/19 | 0.36 |
| 7/15/18 | 0.12 | 10/11/18 | 0.84 | 2/8/19 | 0.21 |
| 7/17/18 | 0.74 | 10/12/18 | 0.27 | 2/12/19 | 0.6 |
| 7/21/18 | 0.2 | 10/15/18 | 0.14 | 2/20/19 | 0.52 |
| 7/22/18 | 1.42 | 10/27/18 | 0.57 | 2/24/19 | 0.56 |
| 7/23/18 | 0.17 | 11/2/18 | 0.36 | 3/2/19 | 0.24 |
| 7/25/18 | 0.54 | 11/3/18 | 0.35 | 3/3/19 | 0.5 |
| 7/27/18 | 0.42 | 11/5/18 | 0.22 | 3/4/19 | 0.2 |
| 8/1/18 | 0.17 | 11/6/18 | 0.61 | 3/10/19 | 0.48 |
| 8/2/18 | 0.14 | 11/9/18 | 0.81 | 3/15/19 | 0.36 |
| 8/4/18 | 0.61 | 11/13/18 | 0.96 | 3/21/19 | 0.35 |
| 8/7/18 | 0.67 | 11/15/18 | 0.66 | 3/22/19 | 0.49 |
| 8/9/18 | 0.15 | 11/16/18 | 0.11 | 3/31/19 | 0.13 |
| 8/11/18 | 2.94 | 11/24/18 | 0.77 | 4/5/19 | 0.17 |
| 8/12/18 | 0.1 | 11/25/18 | 0.29 | 4/8/19 | 0.18 |
| 8/13/18 | 0.65 | 11/26/18 | 0.88 | 4/12/19 | 0.56 |
| 8/14/18 | 0.1 | 12/2/18 | 0.66 | 4/13/19 | 0.26 |
| 8/17/18 | 1.29 | 12/15/18 | 0.12 | 4/15/19 | 0.72 |
| 8/18/18 | 0.34 | 12/16/18 | 1.04 | 4/19/19 | 0.12 |
| 8/19/18 | 0.17 | 12/20/18 | 0.14 | 4/20/19 | 0.76 |

Notice of Violation and Intent to File Suit
June 2, 2022
Page 16 of 18

| | | | | | |
|---|---|---|---|---|---|
| 4/22/19 | 0.23 | 7/22/19 | 1.05 | 11/24/19 | 0.73 |
| 4/26/19 | 1.17 | 7/23/19 | 0.95 | 12/1/19 | 0.58 |
| 4/27/19 | 0.18 | 7/31/19 | 0.73 | 12/2/19 | 0.16 |
| 4/30/19 | 0.17 | 8/3/19 | 0.69 | 12/9/19 | 1.25 |
| 5/2/19 | 0.17 | 8/4/19 | 0.3 | 12/10/19 | 0.14 |
| 5/4/19 | 0.43 | 8/7/19 | 0.35 | 12/11/19 | 0.25 |
| 5/5/19 | 1.11 | 8/14/19 | 0.26 | 12/13/19 | 0.87 |
| 5/12/19 | 1.32 | 8/21/19 | 0.1 | 12/14/19 | 1.06 |
| 5/13/19 | 0.56 | 8/22/19 | 0.45 | 12/17/19 | 0.5 |
| 5/14/19 | 0.16 | 8/23/19 | 0.21 | 12/29/19 | 0.3 |
| 5/19/19 | 0.19 | 8/28/19 | 0.18 | 12/30/19 | 0.53 |
| 5/20/19 | 0.25 | 9/2/19 | 0.13 | 1/3/20 | 0.11 |
| 5/23/19 | 0.28 | 9/7/19 | 0.12 | 1/4/20 | 0.14 |
| 5/28/19 | 0.13 | 9/23/19 | 0.14 | 1/16/20 | 0.11 |
| 5/29/19 | 0.82 | 9/26/19 | 0.18 | 1/18/20 | 0.34 |
| 5/30/19 | 1.26 | 10/2/19 | 0.18 | 1/25/20 | 1.2 |
| 6/2/19 | 0.12 | 10/3/19 | 0.48 | 2/6/20 | 0.31 |
| 6/10/19 | 0.42 | 10/7/19 | 0.42 | 2/7/20 | 0.34 |
| 6/11/19 | 0.21 | 10/9/19 | 0.36 | 2/10/20 | 0.27 |
| 6/13/19 | 0.59 | 10/16/19 | 2.56 | 2/11/20 | 0.29 |
| 6/16/19 | 0.14 | 10/20/19 | 0.4 | 2/13/20 | 0.49 |
| 6/18/19 | 0.69 | 10/22/19 | 0.5 | 2/27/20 | 0.53 |
| 6/21/19 | 0.13 | 10/23/19 | 0.15 | 3/3/20 | 0.28 |
| 6/25/19 | 0.28 | 10/27/19 | 2.2 | 3/6/20 | 0.1 |
| 6/30/19 | 0.12 | 10/30/19 | 0.13 | 3/13/20 | 0.34 |
| 7/6/19 | 0.95 | 10/31/19 | 0.76 | 3/17/20 | 0.11 |
| 7/8/19 | 0.1 | 11/1/19 | 0.12 | 3/19/20 | 0.7 |
| 7/11/19 | 1.25 | 11/7/19 | 0.12 | 3/23/20 | 0.79 |
| 7/17/19 | 0.85 | 11/18/19 | 0.41 | 3/28/20 | 0.27 |
| 7/18/19 | 1.65 | 11/19/19 | 0.38 | 3/29/20 | 0.36 |

Notice of Violation and Intent to File Suit
June 2, 2022
Page 17 of 18

| Date | Value | Date | Value | Date | Value |
|---|---|---|---|---|---|
| 4/8/20 | 0.12 | 8/19/20 | 0.12 | 1/15/21 | 0.36 |
| 4/9/20 | 0.26 | 8/27/20 | 0.35 | 1/16/21 | 0.63 |
| 4/13/20 | 2.58 | 8/28/20 | 0.18 | 1/26/21 | 0.12 |
| 4/18/20 | 0.33 | 8/29/20 | 0.1 | 2/1/21 | 0.26 |
| 4/21/20 | 0.23 | 9/1/20 | 0.37 | 2/7/21 | 0.15 |
| 4/24/20 | 0.44 | 9/2/20 | 0.17 | 2/16/21 | 0.68 |
| 4/26/20 | 0.21 | 9/3/20 | 0.79 | 2/18/21 | 0.3 |
| 4/30/20 | 0.84 | 9/10/20 | 0.46 | 2/22/21 | 0.4 |
| 5/1/20 | 0.2 | 9/28/20 | 0.1 | 2/27/21 | 0.35 |
| 5/3/20 | 0.13 | 9/29/20 | 0.58 | 2/28/21 | 0.15 |
| 5/8/20 | 0.53 | 9/30/20 | 0.97 | 3/1/21 | 0.14 |
| 5/15/20 | 0.25 | 10/2/20 | 0.1 | 3/18/21 | 0.66 |
| 5/23/20 | 0.54 | 10/12/20 | 0.52 | 3/24/21 | 0.53 |
| 6/3/20 | 0.55 | 10/16/20 | 1.26 | 3/28/21 | 0.82 |
| 6/5/20 | 0.51 | 10/28/20 | 0.27 | 3/31/21 | 0.38 |
| 6/11/20 | 0.12 | 10/29/20 | 1.36 | 4/11/21 | 0.49 |
| 6/28/20 | 0.55 | 10/30/20 | 0.49 | 4/12/21 | 0.24 |
| 7/1/20 | 0.39 | 11/1/20 | 0.47 | 4/15/21 | 1.05 |
| 7/3/20 | 0.75 | 11/11/20 | 1.07 | 4/21/21 | 0.39 |
| 7/8/20 | 0.38 | 11/12/20 | 0.15 | 4/25/21 | 0.51 |
| 7/10/20 | 1.22 | 11/13/20 | 0.1 | 4/28/21 | 0.11 |
| 7/17/20 | 1.15 | 11/15/20 | 0.25 | 5/3/21 | 0.53 |
| 7/22/20 | 0.6 | 11/23/20 | 0.43 | 5/4/21 | 0.54 |
| 7/31/20 | 1.05 | 11/26/20 | 0.66 | 5/5/21 | 0.29 |
| 8/3/20 | 0.38 | 11/30/20 | 1.31 | 5/9/21 | 0.64 |
| 8/4/20 | 0.72 | 12/5/20 | 0.89 | 5/26/21 | 0.27 |
| 8/7/20 | 0.11 | 12/14/20 | 0.11 | 5/28/21 | 1.21 |
| 8/16/20 | 0.26 | 12/16/20 | 0.25 | 5/29/21 | 0.42 |
| 8/17/20 | 0.86 | 12/31/20 | 0.33 | 5/30/21 | 0.84 |
| 8/18/20 | 0.14 | 1/1/21 | 0.34 | 6/3/21 | 0.46 |

Notice of Violation and Intent to File Suit
June 2, 2022
Page 18 of 18

| Date | Value | Date | Value | Date | Value |
|---|---|---|---|---|---|
| 6/4/21 | 0.1 | 10/26/21 | 3.91 | 4/1/22 | 0.35 |
| 6/7/21 | 0.4 | 10/29/21 | 0.54 | 4/3/22 | 0.1 |
| 6/8/21 | 1.55 | 10/30/21 | 0.11 | 4/6/22 | 0.28 |
| 6/14/21 | 0.24 | 11/12/21 | 0.51 | 4/7/22 | 3.04 |
| 6/19/21 | 0.87 | 11/13/21 | 0.37 | 4/8/22 | 0.16 |
| 6/22/21 | 0.29 | 11/26/21 | 0.11 | 4/9/22 | 0.13 |
| 7/1/21 | 0.71 | 12/6/21 | 0.3 | 4/14/22 | 0.13 |
| 7/2/21 | 1.17 | 12/11/21 | 0.18 | 4/16/22 | 0.21 |
| 7/3/21 | 0.1 | 12/22/21 | 0.13 | 4/18/22 | 0.61 |
| 7/6/21 | 0.77 | 12/25/21 | 0.2 | 4/19/22 | 0.78 |
| 7/8/21 | 1.42 | 1/1/22 | 0.47 | 5/2/22 | 0.15 |
| 7/9/21 | 0.25 | 1/5/22 | 0.19 | 5/6/22 | 0.57 |
| 8/8/21 | 0.16 | 1/7/22 | 0.18 | 5/7/22 | 0.52 |
| 8/11/21 | 0.54 | 1/16/22 | 0.16 | 5/14/22 | 0.17 |
| 8/19/21 | 0.31 | 1/17/22 | 1.24 | 5/16/22 | 0.12 |
| 8/22/21 | 2.38 | 1/20/22 | 0.22 | 5/19/22 | 0.51 |
| 8/23/21 | 0.97 | 2/3/22 | 0.53 | 5/20/22 | 0.18 |
| 9/1/21 | 6.06 | 2/4/22 | 0.52 | 5/22/22 | 0.23 |
| 9/2/21 | 0.1 | 2/17/22 | 0.23 | | |
| 9/5/21 | 0.14 | 2/18/22 | 0.29 | | |
| 9/9/21 | 0.56 | 2/22/22 | 0.26 | | |
| 9/16/21 | 0.11 | 2/25/22 | 0.52 | | |
| 9/17/21 | 0.13 | 3/6/22 | 0.13 | | |
| 9/23/21 | 0.52 | 3/9/22 | 0.39 | | |
| 9/24/21 | 0.59 | 3/12/22 | 0.21 | | |
| 9/28/21 | 0.1 | 3/17/22 | 0.17 | | |
| 10/4/21 | 0.54 | 3/19/22 | 0.14 | | |
| 10/10/21 | 0.13 | 3/23/22 | 0.12 | | |
| 10/16/21 | 0.23 | 3/24/22 | 0.59 | | |
| 10/25/21 | 0.44 | 3/31/22 | 0.16 | | |