UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RIVERKEEPER, INC.,
       Plaintiff,

v.

STATE CONTRACTING CORP. OF NY (d/b/a CAPITAL INDUSTRIES CORP.); and GEORGE MCGUIRE,
       Defendants.

Case No. 22-cv-6911

[PROPOSED]
CONSENT DECREE

---

WHEREAS, Plaintiff Riverkeeper, Inc. ("Plaintiff") is a not-for-profit environmental organization organized under the laws of the state of New York with a principal place of business in Ossining, New York.

WHEREAS, Defendant State Contracting Corp. of NY (d/b/a Capital Industries Corp.) ("Capital") is a corporation incorporated under the laws of the State of New York that participates in ownership and operation of the vehicle and equipment maintenance and storage facility located at 555 Saw Mill River Road, Yonkers, NY 10701 ("the Facility").

WHEREAS, Defendant George McGuire is the Chief Executive Officer of Capital and participates in ownership and operation of the Facility.

WHEREAS, the Complaint alleges that Defendants discharge polluted stormwater associated with industrial activities from the Facility into waters of the United States, including the Saw Mill River, a navigable water of the United States.

WHEREAS, the Complaint alleges that, at the Facility, Defendants conduct industrial activities described under the primary Standard Industrial Classification ("SIC") Code of 4212 and therefore any discharge of stormwater associated with activities at the Facility is subject to the General Permit for Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the New York State Department of Environmental Conservation ("DEC"), Permit No. GP-0-23-001.

WHEREAS, the Complaint alleges that Defendants have operated the Facility for many years without coverage under the General Permit or an individual Clean Water Act permit.

WHEREAS, Plaintiff sent a notice of intent to sue Defendants (the "Notice Letter") on June 2, 2022, and filed a complaint (the "Complaint") on August 14, 2022, alleging violations of the Clean Water Act ("CWA") Sections 301 and 402, 33 U.S.C. §§ 1311(a), 1342, by, *inter alia*, discharging polluted stormwater associated with industrial activity without coverage under the General Permit and failing to comply with the conditions of the General Permit, seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs.

WHEREAS, Plaintiff has entered and inspected the Facility and the Parties have exchanged information regarding compliance with the Clean Water Act at the Facility.

WHEREAS, Defendants submitted to DEC a Notice of Intent to be covered under the General Permit, and DEC sent a Letter of Acknowledgment on April 20, 2023.

WHEREAS, without any concession or admission by Defendants that they have violated the Clean Water Act, or any concessions or admission by Plaintiff that Defendants' implementation of the measures listed below will prevent all discharge of polluted stormwater or will assure compliance with the terms and conditions of the General Permit, Plaintiff and Defendants (collectively, "the Parties") agree that it is in their mutual interest to resolve this matter without the taking of evidence or finding of fact or law, and the Parties would like to avoid prolonged and costly litigation.

WHEREAS, this Decree shall be submitted to the United States Department of Justice and the United States Environmental Protection Agency ("EPA") for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW, THEREFORE, without the trial of any issue or fact of law, without the admission by Defendant of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOW:**

**I.     DEFINED TERMS**

The defined terms set forth in the foregoing recitals are hereby incorporated into the body of this Decree and are made a part hereof.  Terms used in this Decree that are defined in the Clean Water Act, its implementing regulations, and the General Permit shall have the meanings assigned to them therein, unless otherwise provided in this Decree.  In addition, the following terms used in this Decree have the meaning set forth below:

1. **The Facility.** The real property associated with the vehicle and equipment maintenance facility located at 555 Saw Mill River Rd., Yonkers, NY 10701.

2. **Effective Date.** The date upon which this Decree is entered by the Court.

3. **Term of this Decree.** The period beginning on the Effective Date and ending on the last day of the SWPPP Monitoring Period.

4. **SWPPP.** Stormwater Pollution Prevention Plan, as defined in the General Permit.

5. **Operative SWPPP.** The most recent version of the SWPPP at the Facility. The current Operative SWPPP is attached hereto as Exhibit B.

6. **SWPPP Review Period.** The period beginning on the date that Defendants deliver to Plaintiff a proposed revised SWPPP and ending on the SWPPP Approval Date.

7. **SWPPP Approval Date**. The date upon which Plaintiff provides Defendants with Notice of Approval of Defendants' revised SWPPP. Upon such notice, the revised SWPPP shall become the Operative SWPPP.

8. **SWPPP Implementation Period.** The period beginning on the SWPPP Approval Date and ending no more than ninety (90) days after the SWPPP Approval Date. Defendant will advise Plaintiff once the SWPPP has been Implemented.

9. **SWPPP Implementation Report.** A report prepared by a qualified stormwater professional attesting to implementation of the SWPPP approved by Plaintiff on the Approval Date, due within thirty (30) days of the end of the SWPPP Implementation Period. The SWPPP Implementation Report shall include:
    a. A summary of newly-implemented Best Management Practices ("BMPs");
    b. A certification that all Required New BMPs under the Facility BMP Plan, attached hereto as Exhibit A.1, have been implemented;
    c. A certification that all Recommended New BMPs under the Facility BMP Plan, attached hereto as Exhibit A.2, have been considered, delineating which Recommended New BMPs were adopted, and explaining why all other Recommended New BMPs were not adopted.
    d. Photographs of all BMPs added or improved;
    e. A certification that the professional has visited the Facility in the month prior to submission of the Implementation Report;
    f. A certification that, during the professional's last visit, all BMPs described in the revised SWPPP were in good working order and all housekeeping measures appeared to be taking place.

10. **SWPPP Monitoring Period.** The period beginning on the date the SWPPP Implementation Report is delivered to Plaintiff and ending three (3) years after.

II. **JURISDICTION AND VENUE**

11. **Jurisdiction.** Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (CWA jurisdiction. Plaintiff has standing and has complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2. An actual, justiciable controversy exists between Plaintiff and Capital. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

12. **Venue.** Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action occurred at the Facility and in the Saw Mill River, Hudson River, and New York Harbor watersheds, navigable waters of the United States, that are located within this judicial district.

13. **Consent.** For the purposes of this Decree, or any action to enforce this Decree, Capital consents to the Court's jurisdiction over this Decree and any such action and over Defendant. For purposes of this Decree, Capital consents to venue in this judicial district.

III. **COVERAGE UNDER THE GENERAL PERMIT**

14. **Compliance with SWPPP and the General Permit.** Defendants will implement the Operative SWPPP at the Facility in compliance with the terms of the General Permit, which is hereby incorporated into this Decree, and the Clean Water Act. A failure to adhere to the Operative SWPPP and/or the General Permit is a violation of this Decree.

15. **SWPPP Design.** Defendants shall propose amendments to the Operative SWPPP, adopting the New Required BMPs attached hereto as Exhibit A.1. Defendants shall also consider the Recommended New BMPs attached hereto as Exhibit A.2.

16. **SWPPP Review.** Defendants have provided Plaintiff with a proposed revised SWPPP. The procedure for the SWPPP Review Period shall be as follows:
    a. The Parties will conduct a joint site visit to evaluate the adequacy of the proposed revised SWPPP within thirty (30) days of the Effective Date;
    b. Plaintiff will provide Defendants with comments within thirty (30) days of the site visit;

    c. If necessary, Defendants will provide Plaintiff with an updated revised SWPPP within thirty (30) days of receipt of Plaintiff's comments, addressing Plaintiff's comments;

    d. Within thirty (30) days of receipt of the updated revised SWPPP, Plaintiff shall either provide Defendants with formal Notice of Approval of the revised SWPPP, or shall provide Defendants with notice that there is an ongoing dispute, triggering the meet and confer requirements in Section X.

17. **SWPPP Implementation**. As defined above, the SWPPP Implementation Period for the newly Approved SWPPP shall be not more than ninety (90) days. Within thirty (30) days of implementation, Defendants shall deliver to Plaintiff a SWPPP Implementation Report, as defined above.

18. **SWPPP Amendments.** If, during the Term of this Decree, Defendants amend the Operative SWPPP, or are required to amend the SWPPP for any reason, including but not limited to the reasons enumerated in the General Permit, Defendants shall provide written notice to Plaintiff within five (5) business days of the amendment and shall provide Plaintiff with all documents related to such amendment. Required New BMPs under the Facility BMP Plan, attached hereto as Exhibit A, may not be removed without Plaintiff's approval.

19. **Schedule of Compliance – Plaintiff's Covenant not to Sue.** The General Permit requires aspiring permittees to prepare and fully implement a SWPPP before they are eligible to seek coverage under the General Permit. In deference to practical considerations, the Consent Decree allows a period for Defendants to complete all structural modifications. Therefore, this Decree requires Defendants to seek permit coverage before fully implementing an adequate SWPPP. Provided that the structural modifications described in Exhibit A are completed on schedule, Plaintiff hereby covenants not to prosecute Defendants' failure to fully implement an adequate SWPPP before seeking coverage under the General Permit and covenants not to challenge Defendants' status under the General Permit during this initial period until the SWPPP Implementation Report is received.

20. **Implemented Stormwater Control.** Defendants shall maintain in good working order all stormwater collection and treatment systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to existing housekeeping measures.

## IV. MONITORING PROGRAM

21. **Additional Monitoring.** In addition to the inspections, monitoring, and reporting required under the General Permit and set forth in the Operative SWPPP, Defendants agree to perform the following additional monitoring described herein during the Term of this Decree.

22. **Sampling Points.** The sampling points shall be those described in the Operative SWPPP.

23. **Sampling Frequency.** Defendants will sample and analyze stormwater discharges from one qualifying storm event that results in discharge in each quarter for all applicable benchmarks and numeric effluent limitations.

24. **Sampling Methodology.** Defendants will take samples at each sampling point in a manner that is consistent with the requirements and protocols set forth in the General Permit. Defendants may report this sampling as part of the stormwater monitoring required by the General Permit.

25. **Recordkeeping.** Defendants will comply with the reporting and recordkeeping requirements of the General Permit. Defendants shall maintain written documentation at the Facility describing all inspections and assessments required under applicable provisions of the General Permit or of this Decree.

26. **Photographs of Quarterly Inspections.** While conducting routine quarterly inspections of BMPs (required by Part IV.B of the General Permit) and quarterly visual monitoring (required by Part IV.E of the General Permit), Defendants will photograph:
    a. Each BMP;
    b. Any deficiencies in the implementation and/or adequacy of the BMPs;
    c. Each visual monitoring sample in a completely clear and transparent container, with a view from above and from the side of the container; and
    d. Any corrective actions taken in accordance with Part V of the General Permit.

27. **Results sent to Plaintiff.** Defendants will send to Plaintiff a copy of every inspection record made, every sampling result and photograph taken, every BMP maintenance log, and every employee training log produced in accordance with the SWPPP and the General Permit during the Term of this Decree once per calendar year, no later than February 1 of the following year or on the last day during which this Decree is in effect, whichever is sooner, unless earlier reporting of an exceedance or violation is required pursuant to Section V.

28. **Provision of Government Documents to Plaintiff.** During the Term of this Decree, Defendants shall provide Plaintiff with copies of any documents or correspondence that are exchanged with any government agency, including but not limited to DEC and EPA, that are related to discharges of pollution from the Facility to waterbodies or sewers of any kind or Clean Water Act compliance.
    a. Routine inspection reports, monitoring data and reports, and certifications shall be submitted to Plaintiff on or before February 1 of the following year or on the last day during which this Decree is in effect, whichever is sooner, including but not limited to:
        i. Documents and correspondence related to Defendants' SPDES/NPDES permit coverage at the Facility;
        ii. Annual reports, including the Annual Certification Report required under the General Permit; and
        iii. Monitoring or sampling data.
    b. Records of an exceedance, permit violation, government inspection report, or public or government complaint regarding the Facility shall be submitted to Plaintiff within five (5) business days, including, but not limited to:
        i. Data related to discharges of industrial wastewater or industrial stormwater to the sanitary sewer system, if any; and
        ii. Reports of spills or other incidents that may result in discharge of pollutants to a waterbody or sewer;
        iii. Documents relating to inspections conducted by any governmental agency that relate to industrial wastewater or industrial stormwater; and
        iv. Any record of a complaint received by the government regarding the Facility.

29. **Inspections.** In addition to any other agreed upon site inspections, Defendants agree to grant site access to representative of Plaintiff, including consultants acting on its behalf, to inspect the Facility at least one (1) time per year during the Term of this Decree (a "Site Inspection") in the event Plaintiff provides notice to Defendants of any noncompliance with the General Permit or the Terms of this Decree pursuant to Section XI. The Site Inspection shall occur during normal business hours. Plaintiff shall provide Defendants with as much notice as possible, but at least forty-eight (48) hours' notice prior to a Site Inspection during wet weather, and seventy-two (72) hours' notice prior to a Site Inspection during dry weather. During a Site Inspection, Defendants shall allow Plaintiff and/or its representatives access to all parts of the Facility and the Facility's SWPPP, stormwater monitoring records, and nonprivileged reports and data related to stormwater monitoring at the Facility. During a Site Inspection, Plaintiff's representatives may collect samples of stormwater, sediment, materials, or other substances. Plaintiff shall be permitted to take photographs and/or video recording during any Site Inspection pursuant to this Paragraph. If Plaintiff takes photographs and/or video recording, Plaintiff shall provide Defendants with the photographs and any findings with respect to any samples taken.

V. **EXCEEDANCES AND VIOLATIONS**

30. **Reporting Exceedances of Numeric Effluent Limitations and Benchmark Monitoring Cutoff Concentrations.** Notwithstanding the annual reporting schedule set forth in Section IV, if at any point during the Term of this Decree the analytical results of any sample for any parameter exceeds any applicable *numeric effluent limitation* or *benchmark monitoring cutoff concentration* established in the General Permit, Defendants shall report the event to Plaintiff and provide the analytical results within five (5) business days of receiving the analytical results.

31. **Corrective Action Plan.** Where an effluent limitation or benchmark monitoring cutoff concentration is exceeded, where a violation of the Operative SWPPP or the General Permit is identified, or when Plaintiff provides Defendants notice of non-compliance with the terms of this Decree, Defendants agree to take responsive actions to improve stormwater management practices, including re-evaluating structural and non-structural BMPs and considering additional BMPs aimed at curing the violation and/or reducing pollutant levels observed in samples. Within thirty (30) days of discovering such exceedance or non-compliance, Defendants shall provide Plaintiff with a Corrective Action Plan containing the following information:

    a. Identification of any constituent that experienced an exceedance and/or the condition that caused the violation or non-compliance;
    b. Explanation of the possible cause(s) and/or source(s) of the exceedance, violation, or non-compliance; and
    c. Responsive actions to improve stormwater management practices, including modified or additional feasible BMPs to be considered to further reduce the possibility of future exceedance(s) or violations, and the proposed dates that such actions will be taken.

Defendants shall complete all responsive actions within twelve (12) weeks of discovery unless Plaintiff concurs to an extended timeline for completion. Any concurrence or failure to object by Plaintiff shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's stormwater into compliance with applicable water quality criteria or the Clean Water Act's technology-based standards requiring industrial stormwater discharges to be controlled to the level achievable by the best available technology economically available.

VI. **PAYMENTS**

32. **Environmental Benefit Payment ("EBP").** In lieu of any payment that could have been assessed as a penalty if the matter were tried, Defendants shall pay the sum of ten thousand dollars ($10,000) to the Center for the Urban River at Beczak (the "EBP

8

Recipient") for use on projects relating to the reduction, mitigation, and/or remediation of the effects of stormwater pollution or environmental restoration of, or other benefit to, the Saw Mill River or New York Harbor watersheds. Payments shall be made in accordance with Paragraph 36. None of this payment shall be disbursed to Plaintiff.

33. **Stipulated Additional EBP.** Should Defendants fail to provide information or any required documentation to DEC or Plaintiff by the deadlines required by the General Permit or this Decree, and has continued to fail to produce such information or documentation for ten (10) business days after Plaintiff has notified Defendants of such failure, Defendants shall make an additional payment of one-hundred dollars ($100) per day for such failures, which shall accrue from the date of the missed deadline. Payments shall be made directly to the EBP Recipient. Payment of each additional amount shall be due four (4) weeks following each missed deadline. Defendants shall concurrently notify Plaintiff each time a payment is made and provide a copy of each check and the tracking number for mailing or a copy of the electronic transfer receipt. None of these payments shall be disbursed to Plaintiff.

34. **Fees, Costs, and Expenses.** Defendants shall pay a sum of forty thousand dollars ($40,000) as full and complete satisfaction of Plaintiff's claims for attorneys' fees and costs incurred to date, including investigative and expert costs. Defendants have placed the payment in escrow with Defendants' attorney. Defendants hereby authorize and instruct Defendants' attorney to transfer the payment to Super Law Group within five (5) business days of the Effective Date by check or electronic transfer. Payments shall be made in accordance with Paragraph 36. Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Plaintiff.

35. **Compliance Oversight Fees and Costs**. Plaintiff will incur costs in order to monitor Defendants' compliance with this Decree, including but not limited to costs incurred by Plaintiff or their counsel or consultants to conduct site inspections, collect or review water quality sampling data, review annual reports, and discuss with representatives of Defendants any potential changes to compliance requirements, preparation and participation in mediation, and similar activities. To help defray these costs, Defendants agree to pay Plaintiff's reasonable fees and costs in an amount not to exceed ten thousand dollars ($10,000) through the Term of this Decree. Defendants have placed the payment in escrow with Defendants' attorney. Defendants hereby authorize and instruct Defendants' attorney to transfer the payment to Super Law Group within five (5) business days of the Effective Date by check or electronic transfer. A check shall be sent via certified mail, or similar service with tracking and shall be payable to "Super Law Group, LLC Attorney Trust - IOLA". Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Plaintiff. Riverkeeper or its attorneys shall

present to Defendants an invoice for any payment they propose to take from this sum to cover compliance oversight fees and costs. Defendants shall have two weeks from receipt of any such invoice to object to the sum claimed. If Defendants do not object, Riverkeeper's attorneys shall draw down the trust account to pay the proposed sum. If Defendants object, the Parties shall follow the Dispute Resolution Procedure set forth in Section X. Any funds not used during the Term of this Decree shall be returned to Defendants' attorney.

36. **Payment Plan.** The sum of the above payments at the time of execution is sixty thousand dollars ($60,000), which will be paid on the following schedule:

    a. Payment 1: $30,000, within 60 days of the Effective Date.
    b. Payment 2: $30,000, within 90 days of Payment 1.

    Payments may be made by electronic transfer or check; a check shall be sent by certified mail or similar service with tracking and shall be payable to "Super Law Group, LLC Attorney Trust – IOLA". Payments shall first be apportioned to Riverkeeper's fees and costs, then to the EBP Recipient, and finally to the compliance monitoring fund.

    In the event that any payment owed by Defendants under the Decree is not made on or before the due date, Defendants shall be deemed in default of their obligations under the Decree and all of the outstanding payment obligations under this Decree shall be accelerated such that they shall be immediately due and owing notwithstanding any payment schedule set forth in this Decree. In addition to a continued requirement to make the payment, Defendants shall pay to Super Law Group liquidated attorneys' fees of one hundred ($100) dollars per day for every day that the payment is late. Defendants shall have fourteen (14) days to cure a failure to make a timely payment. If Defendants cure the failure during that period, the penalty in this paragraph shall not apply, but if Defendants do not cure its failure during that fourteen (14) day period, the liquidated attorneys' fees shall be calculated from the original payment due date. If Defendants fail to make payment in full within thirty (30) days of the original payment due date, Riverkeeper may move the Court to enter Judgment against Defendants.

## VII.  EFFECT OF DECREE

37. **Plaintiff's Release of Liability.** Upon Court approval and entry of this Consent Decree, Plaintiff covenants not to sue and releases Defendants (including their representatives, assigns, agents, employees, officers, attorneys and consultants) from any and all claims, causes of action, or liability under CWA Section 505, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, or any other claim or relief (a) relating to or resulting from allegations and claims set forth in the Notice Letter, and (b) for any past violations

10

at the Facility of the Clean Water Act's stormwater provisions alleged, or that could have been alleged, in the Complaint. This Paragraph does not constitute a waiver or release of any claims relating to the enforcement of this Decree.

38. **Reservation.** Plaintiff does not waive its right to bring a future action based on stormwater discharges that occur after the Term of this Decree.

39. **Defendants' Releases of Liability.** Defendants release and discharge Plaintiff and its representatives, assigns, agents, employees, officers, attorneys and consultants, including those who have held positions in the past, from any and all claims, liability, demands, penalties, costs, and causes of action of any nature which concern or are connected with this action.

40. **Compliance with Law.** Plaintiff does not by consent to this Decree warrant or aver in any manner that Defendants' compliance with this Decree shall constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligations of Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

41. **Impossibility of Performance.** Where implementation of the actions set forth in this Decree within the agreed deadlines becomes impossible, despite the timely good faith efforts of the Parties, the Party who is unable to comply shall notify the others in writing within five (5) business days of the date that the failure becomes apparent and shall describe the reason for the non-performance. The Parties agree to meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of one of the Parties, new performance deadlines shall be established. If the Parties cannot timely agree upon the terms of such a stipulation, the Parties shall follow the Dispute Resolution Procedure outlined in Section X.

VIII. **FEDERAL REVIEW OF DECREE**

42. **Review by United States.** The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Decree by the Attorney General of the United States and the Administrator of the EPA. Therefore, upon signing of this Decree by the Parties, Plaintiff shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. If for any reason the United States should decline to approve this Decree in the form

presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Decree raised by the United States.

43. **Entry of Order.**  Upon the expiration of the forty-five (45) day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Decree.  If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Decree raised by the Court.

IX.     MODIFICATION AND ENFROCEMENT OF DECREE

44. **Modification in Writing.**  This Decree may be modified only upon written consent of the Parties and the approval of the Court.

45. **Continuing Jurisdiction of the Court.** This Court shall retain and shall have jurisdiction over the Parties to this Decree for the resolution of any disputes that may arise under this Decree.  This Court shall also allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.

X.      DISPUTE RESOLUTION PROCEDURE

46. **Meet and Confer.**  Any disputes with respect to any of the provisions of this Consent Decree shall be, in the first instance, the subject of informal negotiations between the Parties affected by the dispute to attempt to resolve such dispute.

47. **Motion.**  If a dispute between the Parties cannot be resolved by informal negotiations, a Party may file a motion with the Court seeking resolution of the dispute.  The motion shall set forth the nature of the dispute and a proposal for its resolution.  The other Party shall have thirty (30) days to respond to the motion and propose an alternate resolution.

48. **Notice.**  The moving Party shall provide the other Party with seventy-two (72) hours written notice prior to initiating court proceedings to enforce this Decree.

49. **Fee Awards.**  In resolving any dispute arising from this Agreement, the Court shall have discretion to award attorneys' fees and costs. The relevant provisions of the Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Court.

50. **Remedies.**  The Parties acknowledge and agree that specific performance, declaratory relief, and injunctive relief are the only appropriate remedies for any breach of this Agreement, and under no circumstances shall monetary damages be allowed for any breach of this Agreement.  EBPs, awards of fees and costs, and/or penalties payable to the U.S. Treasury are not damages.

XI.     **MISCELLANEOUS PROVISIONS**

51. **Entire Agreement.**  This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the Parties.

52. **Notices.**  Any notice, demand, copies of documents, or other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing.  Notices shall be directed to the Parties at their respective addresses set forth below.  Notices given in the foregoing manner shall be deemed given: (a) if delivered by courier, when actually received or refused by the addressee; (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs; or (c) if e-mailed, when acknowledged by the addressee.  Each Party shall promptly notify the other Party of any change in this contact information, including but not limited to a change in representation.

| Notices for Plaintiff shall be sent to: | Notice for all Defendants shall be sent to: |
|---|---|
| Julia Muench<br>julia@superlawgroup.com<br>and<br>Andie Altchiler<br>andie@superlawgroup.com<br><br>Super Law Group, LLC<br>222 Broadway, 22nd Floor<br>New York, NY 10038<br><br>Notices sent to the individuals listed above at the address listed above shall be deemed as notice to Plaintiff. | Scott J. Steiner<br>sjsteiner@hrllawyers.com<br>Hogan Rossi & Liguori<br>3 Starr Ridge Road, Suite 200<br>Brewster, New York 10507<br><br><br>Notices sent to the individuals listed above at the addresses listed above shall be deemed as notice to all Defendants. |

53. **Authorization.**  Each person signing this Decree represents and warrants that they have been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

13

54. **Successors and Assigns.**  This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

55. **Transfer of Ownership.**  No transfer of ownership or operation of the Facility shall relieve Defendants of their obligation to implement the terms of this Decree unless (a) at least thirty (30) days prior to any transfer, Defendants provide notice of the proposed transfer to Plaintiff and provides a copy of this Decree to the transferee; (b) the transferee agrees to undertake the obligations herein; and (c) the Parties move to amend this Decree to substitute the transferee for Defendants in this Decree.

56. **Interpretation.**  The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived.  The terms of this Decree were negotiated at arm's length by the Parties hereto.

57. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

58. **Counterparts.**  This Decree may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. The Parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original.  Any one of such completely executed counterparts shall be sufficient proof of this Decree.  Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Decree.  Copies of the original Decree, whether transmitted by facsimile or other means, shall be effective.

59. **Severability.**  In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected, except as to Section IX (providing for the continuing jurisdiction of this Court), which is an essential term and—if not in force—this agreement shall be null and void.

60. **Joint and Several Liability.**  Defendants are jointly and severally liable for all payments and obligations required under this Decree.

61. **Changes to the General Permit.** Defendants will comply fully with the General Permit and any permit modification, individual permit, or General Permit reissuance applicable to the Facility during the Term of this Decree.

62. **Publicity**. Any public statement made by Defendants in any press release, in any oral or written material promoting Defendants' environmental or charitable practices or record, or in Defendants' Annual Reports that refers to Defendants' payments under this Decree shall include the following language: "Payments to this organization were made pursuant to the settlement of a Clean Water Act enforcement suit brought by Riverkeeper, Inc."

63. **Findings.** The Parties attest and the Court, by entering this Consent Decree, finds that this agreement has been negotiated by the Parties in good faith; that settlement of this matter is in the public interest and in accordance with the Clean Water Act; and entry of this Consent Decree is fair and reasonable.

## XII.  EXHIBITS

64. The following Exhibits are attached to this Decree and made a part hereof:

    a. Exhibit A: Facility BMP Plan
    b. Exhibit B: Operative SWPPP
    c. Exhibit C: Schedule

Dated: 10-3-23         State Contract Corp. of NY (d/b/a Capital Industries Corp.)

By: George McGuire
Title: President

Dated: 10-3-23         George McGuire

By: George McGuire
Title: President

15

Dated: October 2, 2023                 Riverkeeper, Inc.

_____

By: Victoria Leung
Title: Staff Attorney

ENTERED and DATED this  21st day of  November , 2023

_____
Honorable Cathy Seibel
United States District Judge

The Clerk shall close the case.

16

# EXHIBIT A: FACILITY BMP PLAN

Defendants have developed and will implement a Stormwater Pollution Prevention Plan ("SWPPP") containing, at a minimum, the following best management practices ("BMPs"). The SWPPP shall be sufficient to meet all requirements of the NYSDEC SPDES Multi-Sector General Permit in effect that are applicable to Defendants. The SWPPP shall be provided to Plaintiff and subject to review, comment, and approval by Plaintiff, consistent with best engineering practices and standards in the stormwater treatment and management industry.

1. Required New BMPs. Defendants shall develop and implement a SWPPP containing, at a minimum, the following BMPs:

    a) Capital shall expand the trench drain, connect the existing dry well to that system, and connect the new proposed dry well to the northwest bioswale to expand the Facility's capacity to retain and infiltrate stormwater.

    b) Capital shall add a second bioswale to the southwest corner.

    c) Capital shall consolidate piles of stored metal parts and equipment, particularly those located in the lowest portion of the property, and implement improved general housekeeping measures.

2. Recommended New BMPs. Defendants shall consider implementing additional BMPs during the Implementation Period, including but not limited to the following BMPs:

    d) Capital should install site engineering controls in concert to assure stormwater flows as intended at the Facility, including: 1) the expansion of the trench drain/oil water separator/dry well system; 2) bioswales at the property boundaries; and 3) the filtration insert at the existing drywell.

    e) Capital should incorporate drainage from the roof of the welding shed into the SWPPP.

    f) Capital should consider improved spill controls, appropriate distribution of spill kits, and employee training for spill control and proper clean-up techniques.

    g) Capital should consider additional spill clean-up techniques to incorporated into the SWPPP, as large spills should be addressed by shallow soil scraping and proper drumming and disposal of contaminated soils—not with general housekeeping.

    h) Capital should complete its assessment of the aboveground tanks on site, identify and remove the specific tanks that are to be removed, and assess the compliance of any remaining tanks, particularly whether secondary containment measures are required.

# EXHIBIT C – SCHEDULE

*This Schedule is intended for guidance purposes only. In the event of a discrepancy between the language of the Decree and this Schedule, the language of the Decree controls.*

## GENERAL TERMS

| CATEGORY | REQUIREMENT | SECTION | DEADLINE |
|---|---|---|---|
| Terms | Payments | VI | Effective Date* + 5 business days |
| Term of Decree | | I | SWPPP Implementation Report + 3 years |

## SWPPP REVIEW AND IMPLEMENTATION PERIODS

| CATEGORY | REQUIREMENT | SECTION | DEADLINE |
|---|---|---|---|
| SWPPP Review | Joint site visit to evaluate adequacy of SWPPP | III | Effective Date + 30 days |
| | Plaintiff provides Defendant with comments | III | Effective Date + 60 days |
| | Defendants provide updated revised SWPPP | III | Effective Date + 90 days |
| | Plaintiff provides Notice of Approval of SWPPP *or* notice of a dispute | III | Effective Date + 120 days = Approval Date |
| SWPPP Implementation | SWPPP Implementation Period | III | Approval Date + 90 days |
| | SWPPP Implementation Report | III | Approval Date + 120 days |

*The Effective Date is the date this Decree was entered by the Court.

19

## SWPP MONITORING PERIOD

| CATEGORY | REQUIREMENT | SECTION | DEADLINE |
|---|---|---|---|
| Terms | SWPPP Monitoring Period | IV | Delivery of SWPPP Implementation Report + 3 years |
| Monitoring | Sampling of stormwater discharges for all applicable benchmarks | IV | Quarterly** |
| | Photographs of visual monitoring of stormwater discharges | IV | Quarterly |
| | Photographs of routine inspections of BMPs | IV | Quarterly |
| Ongoing Reporting to Plaintiff | Amendments to SWPPP | III | 30 days |
| | Copies of inspection records, sampling results, photographs, BMP maintenance logs, and employee training logs | IV | Feb. 1 annually |
| | Copies of routine government reporting, e.g. ACR, DMR, certifications | IV | Feb. 1 annually |
| | Records of an exceedance, permit violation, government inspection report, or public or government complaint regarding the Facility | IV | 10 business days |
| Upon exceedance, violation, or non-compliance | Notification in event of benchmark exceedance | V | 10 business days |
| | Provide Plaintiff with Corrective Action Plan for any exceedance | V | 30 days of discovery |
| | Complete all corrective actions responding to exceedance, and provide proof to Plaintiff | V | 12 weeks of discovery |

*The Effective Date is the date this Decree was entered by the Court.
**As defined by the General Permit, Table IV.2, as follows:

| **Quarter** | **Period** | **28-day Deadline** |
|---|---|---|
| Quarter 1 | January 1 – March 31 | April 28 |
| Quarter 2 | April 1 – June 30 | July 28 |
| Quarter 3 | July 1 – September 30 | October 28 |
| Quarter 4 | October 1 – December 31 | January 28 |